Your Honor, likewise, I will be the only part attorney arguing. I'd like to reserve two minutes for rebuttal. May it assist the Court, Kevin Anderson for Michael H. Meyer, Chapter 13, Trustee for the District of Utah. Your Honors, this issue involves a matter that has vexed courts and practitioners since its implementation in October of 2005, resulting in the exact or the general issue of what should be repaid to creditors, twice being taken up to the Supreme Court in the Lanning and the Ransom case. In this particular case, there's, the parties agree that the appellate panel correctly determined that the railroad retirement was included in the determination of current monthly income pursuant to the Statute 10110A. Appellant asserts that the bankruptcy appellate panel erred when it held that the monies that qualify as current monthly income and must be listed in the means test, which has been memorialized by the Form B-22C. The means test is the mechanism Congress designed in order to ensure that debtors who can pay creditors do pay creditors. And I'm taking these quotes from Lanning, that creditors return the maximum amount to creditors and that creditors not be denied payments that a debtor could easily make. So in short, by adding Exactly is the difference between the amount of money that these debtors could apply during the time covered by the plan, the difference between the amount of money they could apply to their debts if the railroad funds are anticipated to be included and the amount if they're not. When you say anticipated to be included, do you mean in the calculation of projected disposable income? Right. In other words, if I understand it correctly, by all means correct me if I'm in error, the debtor comes in and says, I have a lot of debts I can't pay now. My creditors are at the door. I want additional time to pay off my creditors. And I'm prepared to allocate this amount of money over my subsistence expenses to meet my debts. And I want the plan to go on for X period of time. But I can't meet all my debts. I'm going to have to get part of my debts forgiven. So I'm trying to figure out what's the difference in terms of what has to be forgiven between the two alternative ways that are being discussed. Well, the, it's the, it's the trustee's position that current monthly income, that projected disposable income is a subset of current monthly income. And that what is included in current monthly income inherently must be included in projected disposable income. Now the court asks what's the difference in the outcome of this case? The form B-22 requires debtors to list all current monthly income, as that term is defined. It then allows debtors to deduct certain expenses as established by the IRS standards, and then it results in net monthly income that when multiplied by the applicable commitment period, 36 or 60 months, is the amount that must be returned to unsecured creditors. So it's different than calculating in a payment. It's calculating the return to a specific class of creditors, namely unsecured creditors. And it, the form B-22C has not been filed that calculates that amount, but the trustee asserted in the objection that the return to creditors if the B-22C is strictly followed would be greater than the proposed return in the debtor's plan. Okay, so Robert Schultz gets $3,709.25 per month, right? Yes. His income comes from the railroad retirement, right? And then Mrs. Schultz gets $3,822.98. Working at a title company, yes. So the BAP ruled against you, and. Well, it was, we won one side and lost the other. But you lost enough that you're here. Exactly. So from the standpoint, is it your position that where exactly did the BAP go wrong regarding its reading of I guess Hamilton and Esquerdo? Well, in two aspects, it erred. The Lanning decision is relevant to this appeal only for purposes of determining that it's not applicable to the facts of this appeal. And let me explain that. Lanning states that the B-22C creates a presumptive required return for creditors that must be paid for the debtor to qualify for a discharge. Lanning further holds that a bankruptcy judge retains some discretion in order to adjust that number, but subject to the predicate that the debtor establish a known or virtually certain change in their income or expenses. Well, can you, okay, I think what you're saying, though, is you're saying that Lanning may have identified the exclusive circumstances in which courts have discretion to depart from the presumptive figure, but it seems that also that it didn't foreclose reference to other statutory commands. And if 231M does require the RRA benefits to be excluded from the PDI, which is what the, I guess, the Schultz's argue, it seems that nothing in Lanning would preclude from giving effect to that statute. So it seems that you can't resolve the case stopping at Lanning. You still have to look at 231M. Well, Your Honor, I think what we're Because you want to stop at Lanning, right? No. We think Lanning does not apply because there's not been any change in the debtor's circumstances. And as Lanning says, the B-22C creates the presumptive return to creditors and can only be rebutted by the debtor showing a change in financial circumstances. So as was argued at the BAP, and we agree the BAP correctly ruled, the Railroad Retirement Act is not included in the definition of current monthly income under 101A. Therefore, it is Well, didn't the BAP say that the forward-looking approach required in Lanning meant that the courts were necessarily anticipating future income and calculating PDI? And so because 231M prohibits the anticipation of RRA benefits, they cannot be included. Is that what the BAP said? Yes. And so, but doesn't that conclusion depend on Esquerdo? Well, that's the area where we think the BAP erred as well. That they didn't interpret Esquerdo correctly. Exactly. That they viewed, anticipated as the same being synonymous with projected. And while conversationally they may be synonymous, statutorily they are not. And in Esquerdo, the court went to great lengths to define the term of anticipate, finding a lack of legislative history, finding a lack of other statutes that have that exact same term. Esquerdo was the one where the person got a one-time pay, right? No, that's Lanning, Your Honor. Oh, that's Lanning. Okay. I'm sorry. Esquerdo is the basis for the court finding that anticipated is synonymous with projected. Therefore, if it's projected, it can be excluded. Our position is that the term anticipated in Esquerdo means something very different. And in Esquerdo, the court determined that the meaning of anticipated was that the beneficiary could not receive or could not commit those proceeds until he'd received them. And, of course, part of that is to protect those proceeds from the attachment of creditors. But there is nothing in Chapter 13 that involves a compulsory means by which the debtors can be compelled to contribute that money. So, one, the protection isn't required. Two, that the debtor is not spending money before they receive it under the trust is addressed by the fact that the plan does not require a lump sum payment up front. It's essentially a contract that each month the debtor will pay X amount. I think it's yes, yes, please, Your Honor. So, why is it wrong to look at this as kind of an indirect form of attachment? Right? You just said that the debtor is not being compelled, you know, to pay to a specific creditor necessarily, a sum certain from his benefits. But isn't that, in effect, what's going on if you include the benefits within projected disposable? Well, Chapter 13 is completely involuntary or voluntary in filing. There is no means to compel someone to file Chapter 13. In addition, the amount to be contributed by the debtor is voluntary. The B-22 simply establishes the price the debtor has to pay to qualify for the extremely broad discharge under Chapter 13. If the debtor doesn't want to pay the price, he doesn't get the discharge. There's been no harm. He's in the exact same position that he was before he filed for bankruptcy. And that's why the Lanning decision is important, because Congress said in interpreting the means test, it should be done in a way to ensure that credit debtors pay the maximum they can afford to creditors. That was the purpose of the means test, was to accomplish that. And Congress did make a policy decision to exclude Social Security income from the calculation of current monthly income. It made no other policy decision regarding any other anti-or any other income that's derived with an anti-assignment, anti-anticipation cause. Counsel, in the dispute apparently is coming down to varying means, varying definitions of the term, anticipating. In the divorce case, if I understood it correctly, what happened was the debtor was in debt, the court essentially took a net present value of future income stream, divided it in some way between husband and wife, and assigned the wife current assets to cover what otherwise would be received over time. Yes. So you can't do that. As I understand it, under Chapter 13, there's no assignment by the debtor of any income to be received in the future presently. All he's doing is promising as he gets the money, he will pay a percentage of it to his creditors. Is that your understanding? Yes, Your Honor. I would completely agree with that. All right. Following up on Judge Watford's question, what if the debtor is optimistic in predicting his future income, and Congress decides to do away with the railroad protections or whatever, and involve the poor debtors in years of litigation, so he doesn't have that amount of money when the time comes? Is there provisions or is there an opportunity to amend the plan? Yes. There's a statutory mechanism to address that exact situation. Section 1329 says the debtor can come in at any time and ask the court to revisit what amount should be paid to unsecured creditors based on a change in financial circumstances. And we see these motions all the time. They're very common in Chapter 13. He's not assigning any money. He's not committing any money. He's not, in effect, using any money for security. He's simply saying, if I have it, I'll pay it. Exactly. The trustee, the bankruptcy court creditors have no type of vested interest in any shape or form. But if you lose your job or if they stop paying your retirement because the Federal Government says so, then you can come back and say, well, I don't have this is what my income is now. Exactly. And that's why they use the term projected, because in Lanning they explain you take historical information and you make the best projection you can as to what should be required at the confirmation hearing. But these cases go 3 to 5 years, and the vicissitudes of life are always going to impair the debtor's ability to complete a plan. Well, if we affirm what remains to be done in the bankruptcy court if we affirm the BAP? Well, the BAP decided the strict legal issues as to what is included and what is excluded. So basically, we go back and we do the math. You fill out the Form B-22 as directed by the BAP, you pick the number, and life goes on. And that's why the appeal was taken at this juncture, so that we didn't have to go back down, redo that number, and then take the issue up on confirmation. On the other side, if we reverse the BAP, then you just go back and put in more numbers. Pardon? If we reverse the BAP, then it's included. So is it any different whether we affirm or reverse? You still have to go back and crunch numbers, right? Exactly. And it would simply be a matter of you have to include the railroad income in Part 1 of the B-22, because it's current monthly income. You get down to Part 5, it allows debtors to deduct expenses under special circumstances. And in this case, that's where the debtor would say, well, I'm excluding this amount of money because I assert that it's not included. But whether we reverse or affirm, it still has to go back and put the right numbers in. Absolutely. Yes, Your Honor. And to determine what should be repaid to creditors, that would be the calculation that would be performed. Can I ask one more question? Does this come up a lot, this particular? Well, as to the Railroad Retirement Act? Yes. No. But the language referred to in the BAP that suggests any anti-anticipation or any anti-assignment clause, those clauses are found in thousands of private and public annuities. For example, the teachers in California have to be paid. Well, I think the judge's retirement is we have to do – I think some people, if they get divorced, before they can actually retire. Like, if you walk away before you can retire, you don't get anything. So you have to make – they have what's called the rule of 80. So if they were getting divorced before that, what sort of interest would the spouse have in something you might never get? But then you might get it too. I'm not following why – Well, see, if we don't make the – you know, there are people that you have to work – we have what's called, like, you have to work until you're 65, and that means it – and plus 15 years of service. So if you leave when you're 64 and you have 14 years of service, you don't get – you don't get anything. You walk away from no retirement. If you make it until you're 65 and with your 15 years, then you get your salary for the rest of your life. And so the question is – If someone was getting divorced at, say, 63, and the other person said, well, I want half of that retirement when they get there when they're 65, well, if they don't make it to 65, there's nothing there. Yeah. And as the Court has observed, though, in this case, you project based on best present available information that the code allows for modification based on change in circumstances. So you could come back and say, I'm not getting a retirement now. I need to amend my plan so that it reflects per the B-22C what I can reasonably repay. Thank you. We've used more than your time, but if the panel has any questions after we go to the other side, we'll allow the panel to ask them.  Thank you, Your Honor. Good morning. My name is Gary Huss. I represent Robert and Carolyn Schultz. I've thought about what's in my brief, and I believe that my brief pretty much covers the issues. I don't want to repeat any of that. I'd kind of like to start out by just touching on some of the questions that were raised by the three of you. Well, we assure – I mean, you obviously know and I think all parties should be assured that the judges read all the briefs before and prepare, so you don't have to repeat what's in your briefs, because we do know that. I understand. Counsel, maybe I can just focus you on the issue that concerns me the most, because it looks to me as though the BAP misread that Hiscierto case, or not even misread it, just didn't follow it. Just explain to me how you interpret the ruling in Hiscierto as supporting the outcome of the BAP here. Well, when I looked at that case, I felt that the Court was drawing from it the notion that Congress had intended to protect and shield railroad retirement recipients from creditors. And in that divorce setting, it looked like the Court was trying to do that, to uphold the anti-alienation, anti-garnishment provision to protect those who were anticipated. And that's what I think is happening here, is contrary to what counsel has suggested, when you do the means test calculation to determine disposable income, that is setting an amount that the debtor has to commit to pay on a monthly basis as his plan payment. It's not something that he's saying, well, if I have it, I'll pay it. No. He's going to pay it unless he can come into court and modify it later. But Congress, under 231M, has said, we don't want these benefits to be anticipated, period. But the Court in Hiscierto, though, construed the word anticipate, or the term anticipation, to encompass this body of trust law that has a very different concept of anticipation than what you're talking about. That's my problem. Just help me work through that. When I, well, the word anticipate, to me, means to count on it. To assume it's going to happen. Okay. But all I'm saying is that we've got a Supreme Court case that interpreted the exact word you're relying on in a totally different way. Right? So just how do you get from the way the Supreme Court construed anticipation to the reading you want it to get here? Well, I don't think that what I'm saying is the BAP used that particular case, the divorce case, to support its reasoning as to how it reconciled the different statutes and Hamilton v. Lanning and that case altogether to come to the conclusion that you couldn't anticipate the railroad retirement benefits at what should not be part of the disposable income calculation in bankruptcy. So that's where my focus was. So I don't understand. I mean, the Supreme Court may have gone off on another avenue in Hizkerda, but that wasn't my focus. My focus was it appeared to me that that case was consistent with Lanning and saying that barrier is a valid barrier that has to be given due regard in the bankruptcy context. And that's where I stop. Well, I mean, what the Court there said was that certainly you can't, you couldn't use the present value of all of these anticipated benefits. You couldn't sort of reduce that to present value and then offset that against other property that the couple was trying to split up. So the Court construed anticipate in that sense to get basically the value of the benefits before they were due to you, and I just don't see that happening in the context we're talking about here. There's no present value reduction of the anticipated RRA benefits that's being used somehow to determine how much the debtor has to pay. Well, we're not dividing up assets like they would in a divorce court. What they're trying to do here is project into the future the revenue or income that a person is likely to receive. And Congress has said you don't count that, much like it's done with Social Security. But is there any reasonable likelihood that the RRA benefits will vary in the future? Could you repeat that? Is there any reasonable likelihood that Mr. Schultz's railroad benefits will vary in the future? That's a good question, because when I look at it, you know, frankly, it's like a lot of other retirements. You kind of look at it and say, well, he's probably going to get it. And the only answer I have to that is I go back to 231M, where it says, but you're not supposed to count it, you're not supposed to anticipate it. And even, I mean, Congress has said that. Well, counsel, it's clear that M would be violated if the bankruptcy court required the debtor to, as part of the plan, to assign future income from his retirement to his creditors or to the bankruptcy trustees. So it would flow without going through him. That would clearly be an anticipation of an income stream to be received in the future. But I think the panel is having trouble equating that with a situation where basically he is saying, I will pay this money in the future in order to obtain certain benefits under the bankruptcy code, but I have an escape valve. If I don't have the money, I can come in and modify the plan. So there's no pre-assignment of his income stream, is there? Well, there isn't something that I would call an assignment. What there is is a written commitment. He's submitting a plan and signing it saying, I am going to commit to pay this money, which will include part of my railroad retirement benefits, which is exactly what I think 231M says, you're not supposed to count. And that's why I think the VAP was correct. So you're saying the money is exempt? Yes. Okay. I'm saying that the bankruptcy panel was correct in its reasoning. But doesn't the statute identify subsistence expenses and various things as exempt and not include this? Correct. Okay. But are you talking about 10110A? I believe that's in the CMI calculation, but it still doesn't do away with the 231M, the Railroad Retirement Act itself. I think as the VAP was saying, you don't look at bankruptcy laws in a vacuum. That's why it asked the question to opposing counsel during argument. Are you saying that 231M is irrelevant? And their position was, yes, it's not relevant. The VAP said, no, you have to look beyond bankruptcy laws also. You have to reconcile other congressional statutes that come into play, and 231M is one. So I don't think that you can view the bankruptcy laws in isolation here when it comes to the Railroad Retirement Act. I think, obviously, I think that you both make points that say to us that whatever this Court decides, we have to publish. And I think the bankruptcy Court published, too, didn't it? Mm-hmm. So that would mean that whatever we say, whether we reverse or affirm it, it will be published and be binding unless the Supreme Court decides that we get it wrong. Did you have anything additional? I have no other. The panel does not have any additional questions, and I don't think you have any additional at this time. All right. Thank you both for your argument. This matter will stand submitted. The Court is currently at recess for the week. All right.
judges: Singleton, Callahan, Watford